UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RANDALL K. KIPER                                                      Petitioner

v.                                            Civil Action No. 3:21-cv-379-RGJ-HBB

AMY ROBEY, WARDEN                                                   Respondent

**MEMORANDUM OPINION AND ORDER**

Petitioner Randall K. Kiper ("Kiper") objects by counsel [DE 15] and *pro se* [DE 18] to

Magistrate Judge Brennenstuhl's ("Magistrate Judge") Findings of Fact, Conclusions of Law and

Recommendation [DE 12 ("R&R")] denying Kiper's § 2254 petition and certificate of

appealability.   The Respondent, Amy Robey, the Warden ("Warden"), did not respond to the

objections.   This matter is ripe.   For the reasons below, the Court **DENIES** Kiper's Objections

[DE 15; DE 18] and **ADOPTS** the R&R [DE 12].

## I.      BACKGROUND

Following a trial before the Circuit Court in Jefferson County, Kentucky ("Jefferson Circuit

Court"), a jury found Kiper guilty of attempted murder, two counts of first-degree assault, first-

degree wanton endangerment, and being a first-degree persistent felony offender ("PFO").   *Kiper*

*v. Commonwealth*, 399 S.W.3d 736, 739 (Ky. 2012) ("*Kiper I*").   The Jefferson Circuit Court

sentenced Kiper to 70 years imprisonment.   *Id.*   The Supreme Court of Kentucky provided the

following relevant facts regarding Kiper's conviction:

The trial court found the evidence showed the following:

In November 2009, [Tim] Burton was riding as a passenger in the front seat of his
car, which was being driven by his mother, Christine Saylor. His nephew, one-year
old Keyvin, rode in the back seat.

Just after they stopped at the curb in front of Keyvin's mother's residence, [Kiper] in his white pickup truck pulled up alongside the Burton vehicle. Burton was acquainted with [Kiper]. [Kiper] then pointed a handgun through the open window of his truck at Burton, and fired several shots in rapid succession. Burton was struck seven times. As [Kiper] drove away he fired one more shot, which struck Saylor's spine and left her paralyzed for life. At the scene, and again at the hospital, Burton named [Kiper] as the assailant.

As a result of the shooting, [Kiper] was indicted on three counts of attempted murder; three counts of first-degree assault; one count of first-degree wanton endangerment, and of being a [PFO]. [Kiper]'s defense was that he was not at the scene, and he presented alibi witnesses who placed him elsewhere at the time of the shooting. Nevertheless, the jury convicted him of attempted murder for shooting at Burton, one count of first-degree assault for the shooting of Burton, one count of first-degree assault for the shooting of Saylor, one count of first-degree wanton endangerment for endangering Ferguson, and of being a first-degree persistent felony offender.[1]

The jury's PFO enhanced sentencing recommendation totaled 100 years; however, pursuant to the sentencing cap contained in KRS 532.110, the trial court modified the jury's sentencing recommendation to the statutory maximum of seventy years. As modified, the trial court sentenced [Kiper] to forty-five years for the attempted murder of Burton; twenty years for each of the two firstdegree assault convictions (Burton and Saylor); and five years for the wanton endangerment conviction (Ferguson). The assault convictions were ordered to run concurrently with each other, but consecutive to the forty-five-year sentence for attempted murder and consecutive to the five-year sentence for wanton endangerment,[2] for a total of seventy years' imprisonment.

*Id.* at 739–40 (footnotes in original).

Kiper appealed, as a matter of right, to the Supreme Court of Kentucky. *Id.* at 739. The

Supreme Court held in Kiper's favor on his double jeopardy claim but denied his four claims for

prosecutorial misconduct. *See id.* at 740–50. Kiper's conviction for first-degree assault on Burton

was vacated and remanded for entry of a new judgment. *See id.* at 746. The Supreme Court held

---

[1] "Ferguson was near the Burton vehicle when [Kiper] began shooting. [Kiper] was acquitted of the charge of first-degree assault against Keyvin." *Kiper I*, 399 S.W.3d at 740 n.2.

[2] "At the request of the Department of Corrections, the trial court entered an Amended Judgment of Conviction and Sentence to reflect the minimum ten-year sentence for an enhanced sentence of first-degree wanton endangerment. This did not, however, affect the total sentence imposed." *Kiper I*, 399 S.W.3d at n.3.

that Kiper's total sentence of 70 years would remain unaffected because his 20-year sentence for assaulting Burton was to be served concurrently with his 20-year sentence for the assault against Saylor. *Id.* at 739 n.1, 746, 750.

The Supreme Court rendered its opinion on November 21, 2012. *See id.* at 736. Kiper, proceeding *pro se*, filed a petition for rehearing and modification. [DE 10-2 at 239–51]. The Commonwealth agreed that a simple correction to certain pages in the opinion was warranted. [*Id.* at 252–53]. The Supreme Court of Kentucky issued an order on April 25, 2013, that denied the petition for rehearing, granted the petition for modification of the opinion, and announced that the opinion was modified by substituting certain pages which did not affect the holding. [*Id.* at 254]. The opinion became final on April 25, 2013. [*Id.*].

On December 23, 2013, Kiper filed, *pro se*, a Kentucky Rule of Criminal Procedure ("RCr") 11.42 motion to vacate and supporting memorandum in the Jefferson Circuit Court. *Id.* at 255–67, 268–432); *Kiper v. Commonwealth*, No. 2018-CA-001690-MR, 2020 WL 3027315, at *1 (Ky. Ct. App. June 5, 2020) ("*Kiper II*"). The RCr 11.42 motion alleged that Kiper received ineffective assistance of trial counsel. *Kiper II*, 2020 WL 3027315, at *1. Appointed counsel filed a supplement that raised four additional claims of ineffective assistance of counsel. *Id.* One of those claims alleged that Kiper was constructively denied counsel in contravention of the Sixth and Fourteenth Amendments to the United States Constitution and Sections Eleven and Fourteen of the Kentucky Constitution because of trial counsel's mental incapacity. *Id.* at 3–4.

The Jefferson Circuit Court conducted an evidentiary hearing on August 7, 2017. *Kiper II*, 2020 WL 3027315, at *1. The hearing focused on the mental competency of trial counsel, who died approximately one year after the trial. *Id.* On September 10, 2018, the Jefferson Circuit Court issued an opinion and order denying Kiper's RCr 11.42 motion and holding as follows:

Kiper's argument rests on the notion that his trial counsel was suffering from a mental incapacity that made him incapable of providing effective assistance at trial. However, as recounted by the Commonwealth in its Brief, trial counsel reviewed recorded witness statements prior to trial, actively participated in jury selection, appropriately objected to the Commonwealth's opening statement, gave his own opening statement, and moved for the separation of witnesses. Additionally, during the Commonwealth's case in chief, Kiper's counsel strategically decided when and whether to cross-examine witnesses in an effort to discredit the identification of Kiper as the shooter. Kiper's counsel also presented a defense, calling and questioning witnesses in an attempt to establish an alibi for Kiper on the day of the crime, as well as to minimize any potential motive that Kiper had in committing the crime in question. Given the ways in which Kiper's counsel meaningfully and substantively participated in his defense at trial, it is clear that any real or perceived mental incapacity on the part of Kiper's trial counsel did not render his counsel insufficient under the Sixth Amendment.

Moreover, based on the testimony of the lead prosecutor during the trial, Kiper's trial counsel was in fact quite effective. He put on an understandable defense, he extensively and intelligently cross-examined the Commonwealth's witnesses, and gave coherent opening and closing statements. The testimony of a medical professional who never met Kiper's counsel does not suffice to establish that his counsel provided ineffective assistance, especially when compared with the observations of a seasoned prosecutor, as well as this Court.

Frankly, Kiper's motion is not a close call. Kiper has not established either that counsel's performance was deficient, or that, in the absence of this supposed deficient performance, the outcome at trial would have been different. Moreover, Kiper was acquitted of two counts of Attempted Murder and one count of Assault in the First Degree at trial, establishing even further the competence of his trial counsel.

Kiper, having failed to satisfy the standard established in *Strickland* and *Gall*, cannot justify a motion to vacate, set aside, or modify his sentence. Accordingly, Kiper's motion pursuant to RCr 11.42 must be denied.

*Id.* at 2–3.

Kiper filed a timely appeal of the Jefferson Circuit Court's order with the Kentucky Court

of Appeals.  On appeal, he raised eight claims of ineffective assistance of counsel and one violation

under *Brady v. Maryland*, 373 U.S. 83 (1963). [DE 10-2 at 592–93].[3]   The Kentucky Court of Appeals noted that Kiper put on testimony from Tammy Evenow ("Evenow"), an adult psychiatrist and nurse practitioner who testified that trial counsel for Kiper was suffering cognitive decline at the time of trial. *See Kiper II*, 2020 WL 3027315, at *1–2.   However, the Court of appeals also explained that Evenow had never met trial counsel, evaluated a lawyer's performance, or observed court proceedings. *Id.*   Mark Barker, the lead prosecutor in the case against Kiper, testified that he did not observe any behaviors that indicated Kiper's trial counsel may have been suffering from cognitive decline. *Id.*   Instead, he testified that trial counsel performed above average and zealously cross-examined witnesses. *Id.*

After recounting the evidence and examining the applicable legal standards, the Kentucky Court of Appeals held that Kiper was not denied effective assistance of counsel due to his trial counsel's cognitive impairment. *Id.* at 3.   The Court of Appeals held that Kiper essentially reargued his case on appeal. *Id.* at 4.   The trial court evaluated the weight and credibility of the evidence and found that "a medical professional who never met Kiper's counsel does not suffice to establish that his counsel provided ineffective assistance, especially when compared with the observations of a seasoned prosecutor." *Id.*   The Kentucky Court of Appeals held that the trial

---

[3] Specifically, Kiper's collateral attack brief asserted: 1) "Kiper was denied effective assistance of counsel in contravention of the 6th and 14th Amendments of the United States Constitution and sections 11 and 14 of the Kentucky Constitution due to trial counsel's cognitive incapacity"; 2) "Trial counsel was ineffective when he failed to conduct a pretrial investigation"; 3) "A *Brady* violation occurred when the Commonwealth did not turn over multiple video camera footage during discovery"; 4) "Trial counsel was ineffective when he failed to request a mistrial after jurors saw Kiper in shackles"; 5) "Trial counsel was ineffective when he failed to cross-examine and impeach several witnesses"; 6) "Trial counsel was ineffective when he failed to object to multiple objectionable statements"; 7) "Trial counsel was ineffective when he failed to strike a biased juror"; 8) "Trial counsel was ineffective when [he] failed to file a motion in limine to exclude Kiper's prior conviction older than ten (10) years"; and 9) "Kiper received ineffective assistance of counsel due to trial counsel's cumulative errors." [DE 10-2 at 592–93, 598–617].

court's determination was supported by substantial evidence and affirmed the order denying Kiper's RCr 11.42 motion.  *Id.*

Kiper, through counsel, petitioned the Court of Appeals of Kentucky for a rehearing because: 1) Kiper disagreed with the trial court's assignment of weight to the evidentiary hearing testimony concerning the first ineffective assistance of counsel claim; and 2) the trial and appellate courts failed to rule on his seven other claims.  [DE 10-2 at 709–13].  The Kentucky Court of Appeals summarily denied Kiper's petition.  [*Id.* at 718].  Kiper then sought discretionary review by the Supreme Court of Kentucky on the issue of whether trial counsel was ineffective due to his cognitive incapacity, rendering the proceedings fundamentally unfair.  [*Id.* at 719–29].  The Supreme Court of Kentucky denied Kiper's motion on February 9, 2021.  [*Id.* at 780].

On June 11, 2021, Kiper filed his § 2254 petition which raises eight claims of ineffective assistance of counsel and a *Brady* violation claim.  [DE 1 at 25–51].  Robey responded to each claim [DE 10 at 80–118], but Kiper did not reply.  Pursuant to this Court's referral order, the Magistrate Judge issued an R&R on Kiper's § 2254 petition.  [DE 12].  The R&R recommended dismissing the Petition and that the Court deny a Certificate of Appealability.  [*Id.*].  Kiper timely objected [DE 15; DE 18] to the R&R after the Court granted an extension of time to file objections. [DE 20].  The Court also granted counsel's motion to adopt and supplement Kiper's *pro se* objections.  [*Id.*].  The Court now considers the R&R and Kiper's objections.

## II.    STANDARD

### A.  Standard of Review

A district court may refer a motion to a magistrate judge to prepare a report and recommendation.  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).  "A magistrate judge must promptly conduct the required proceedings . . . [and] enter a recommended disposition, including,

if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). This Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court need not review under a de novo or any other standard those aspects of the report and recommendation to which no specific objection is made and may adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Thomas v. Arn*, 474 U.S. 140, 149–50, 155 (1985).

A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations in original) (citation omitted). A general objection that fails to identify specific factual or legal issues from the R&R is not permitted as it duplicates the magistrate judge's efforts and wastes judicial resources. *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). After reviewing the evidence, the Court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

### B. Standard for Relief from a State Conviction under Federal Habeas Statute

Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Sta. 1214 (1996) ("AEDPA") governs Kiper's claims. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The pertinent section provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is "difficult to meet and [is a] highly deferential standard . . . ."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted).  When the state court articulates the correct legal rule in its review of a claim, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *see also Tolliver v. Sheets*, 594 F.3d 900, 916 (6th Cir. 2010).  Instead, the Court must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.

The Supreme Court has concluded that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded [*sic*] jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508–509 (2013) (per curiam) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).  As to § 2254(d)(2), a federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court unless the state determination is unreasonable. *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).  This subsection applies when a petitioner challenges the factual determinations made by the state court. *See Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001) (challenging the state court's determination that the evidence did not support an aiding and abetting suicide instruction); *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (challenge to state court's factual determination that Sheriff has not seen letter before Clark's trial).

8

A state court decision is not contrary to United States Supreme Court precedent simply because it does not specifically cite Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, the state court does not even have to be aware of the controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts that precedent. *Id.* at 8; *Brown v. Bobby*, 656 F.3d 325, 3321 (6th Cir. 2011).

## III.    DISCUSSION

Kiper, through counsel, objects to the following findings in the R&R: (1) the Magistrate Judge's conclusion that Kiper's right to effective assistance of counsel was not violated, (2) the Magistrate Judge's findings that grounds two and four through nine were properly adjudicated on their merits, and (3) the Magistrate Judge's finding that ground three was adjudicated on its merits. [DE 15].[4]

### A. Ineffective Assistance of Trial Counsel

#### i.    *Standard for Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, a defendant must show that: (1) "counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  "Judicial scrutiny of counsel's performance must be highly deferential . . . A fair assessment of attorney performance requires

---

[4] Kiper filed a separate objection, which was adopted by counsel, that makes many of the same arguments. [DE 18].  Therefore, the Court will address the objections together.

that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The prejudice inquiry requires the defendant "to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a criminal trial, the prejudice inquiry requires the defendant to show there is a reasonable probability that, absent trial counsel's errors, the jury would have had a reasonable doubt respecting guilt. *Id.* at 695.

The Court need not conduct the two-prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one. *Id.* at 697. For example, if the Court determines the defendant fails to satisfy the prejudice prong then it need not determine whether counsel's performance was deficient. *Id.*

When a habeas petitioner claims that his counsel has been ineffective, the assessment of trial counsel's judgment requires another layer of deference: the Court is "required not simply to give [the] attorney[ ] the benefit of the doubt, but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as [he] did." *Cullen*, 563 U.S. at 196 (internal quotation marks and citation omitted). Thus, the nexus of the AEDPA and *Strickland* compels the Court to be "doubly deferential," and "give[ ] both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)) (internal quotation marks omitted).

ii.    *Analysis*

Kiper argues that "trial counsel's dementia prevented him from fully investigating . . . Kiper's case, calling appropriate witnesses, and subjecting the prosecution to a meaningful adversarial testing."  [DE 15 at 842].  The Magistrate Judge found that Kiper did not attempt to demonstrate that the Kentucky Court of Appeals arrived at a different conclusion than the Supreme Court on a question of law or on a set of materially indistinguishable facts.  [DE 12 at 803].  Instead, the Magistrate Judge found that Kiper appeared to concede that he cannot make such a showing because he acknowledged that this area of the law is underdeveloped and relied on dicta to suggest that dementia can support a claim under *Strickland* and *United States v. Cronic*, 466 U.S. 648 (1984).  [*Id.* (citing DE 1 at 35 n.94)].

"Under 28 U.S.C. § 2254(d), the availability of federal habeas relief is limited with respect to claims previously 'adjudicated on the merits' in state-court proceedings."  *Harrington*, 562 U.S. at 92.  Here, the Court of Appeals of Kentucky previously adjudicated the ineffective assistance of counsel claim at issue in *Kiper II*.  Kiper objects to the R&R in a *pro se* filing, which was adopted by counsel, because "[n]one of Kiper's ineffective assistance of counsel issues were addressed by the trial court, which were raised pursuant to *Strickland*[.]"  [DE 18 at 852].  This objection is simply false and easily refuted by Kentucky Court of Appeals' opinion.  *See Kiper II*, 2020 WL 3027315, at *2–3.  In the opinion, the Court of Appeals extensively analyzed Kiper's ineffective assistance of counsel claims pursuant to *Strickland* and held "that Kiper failed to establish his claim of ineffective assistance of counsel."  *Id.* at 4.

Because the restrictive standard of review set out in § 2254(d)(1) applies to Kiper's claims, federal habeas relief may not be granted unless Kiper demonstrates the state appellate court's adjudication of the ineffective assistance of counsel claim "was contrary to, or involved an

unreasonable application of," *Cronic* or *Strickland*.  *See Harrington*, 562 U.S. at 100–101.  As explained by the Magistrate Judge, the "contrary to" clause of § 2254(d)(1) only allows the Court to grant the writ if (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts."  [DE 12 at 803 (quoting *Williams*, 529 U.S. at 412–13)].

Here, Kiper's objection [DE 15] fails to cite any cases indicating that the Kentucky Court of Appeals arrived at a conclusion contrary to one reached by the Supreme Court on a question of law.  *See Williams*, 529 U.S. at 412–13.  It also fails to cite any cases indicating that the Kentucky Court of Appeals reached a conclusion contrary to the Supreme Court on a set of materially indistinguishable facts.  *See id.*  In Kiper's petition, he cites *People v. Brittain*, 2012 IL App (1st) 113667-U, 2013 Ill.App. Unpub. LEXIS 1449 (June 28, 2013) and *Dows v. Wood*, 211 F.3d 480 (9th Cir. 2000) to contend that trial counsel's cognitive decline could result.[5]  [DE 1 at 35]. However, the Supreme Court has held that "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'"  *Parker v. Matthews*, 567 U.S. 37, 48 (2012).  Therefore, neither *Brittain* nor *Dow* can support Kiper's objection to the Magistrate Judge's finding that the Kentucky Court of Appeals arrived at a different conclusion than the Supreme Court on a question of law or on a set of materially indistinguishable facts.  *See id.*

As explained by the Magistrate Judge, the reasoning behind *Dow* and *Brittain* undermines Kiper's reasoning.  [DE 12 at 804].  In *Dow*, the Ninth Circuit held that "[t]he mere fact that

---

[5] In his *pro se* objection adopted by counsel, Kiper also objects to the Kentucky Court of Appeals' reliance on *Brittain* and *Dow* as "legally incorrect and a misplaced extension of *Strickland*[.]"  The Court will only consider objections specific to the Magistrate Judge's R&R.  *See Altyg v. Berryhill*, No. 16-11736, 2017 WL 4296604, at *1 (E.D. Mich. Sept. 28, 2017).  Moreover, this objection is contrary to Kiper's own argument that *Dow* and *Brittain* support his petition.  [DE 1 at 35].

counsel may have suffered from mental illness at the time of trial, however, has never been recognized by the Supreme Court as grounds to automatically presume prejudice." 211 F.3d at 485. The courts in *Dow* and *Brittain* utilized the two-part test in *Strickland* instead of presuming prejudice based on trial counsel's mental impairment. *See id*. at 485–88; *Brittain*, 2013 Ill.App. Unpub. LEXIS 1449, at *59–69. The Kentucky Court of Appeals followed this same analysis when examining Kiper's ineffective assistance of counsel claim. *See Kiper II*, 2020 WL 3027315, at *2–3.

Nevertheless, the Kiper maintains that his trial counsel was ineffective pursuant to *Strickland*. [DE 15 at 842]. He contends that trial counsel's cognitive impairment "prevented him from fully investigating . . . Kiper's case, calling appropriate witnesses, and subjecting the prosecution to meaningful adversarial testing. [*Id.*]. He argues that witnesses should have been called at trial who could have corroborated that Kiper was in Beaver Dam at the time of the shooting. [*Id.*]. The Jefferson Circuit Court went into substantial detail explaining why Kiper failed to show deficient performance during trial. *See Kiper II*, 2020 WL 3027315, at *2–3. Among other things, "trial counsel reviewed recorded witness statements prior to trial, actively participated in jury selection, appropriately objected to the Commonwealth's opening statement, gave his own opening statement, and moved for the separation of witnesses." *Id.* at 2. Based on these findings the Court of Appeals of Kentucky indicated, "we are persuaded by our review that the trial court properly determined that Kiper failed to establish his claim of ineffective assistance of counsel under *Strickland*." *Id.* at *4. For these reasons, Kiper has failed to demonstrate that the ruling the Court of Appeals of Kentucky "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington*, 562 U.S. at 103. The state court's analysis of *Strickland* thus is not contrary to federal law, and the R&R contains no error on this point.

Kiper also objects to the R&R in a *pro se* filing, which was adopted by counsel, because the Magistrate Judge failed to apply the Sixth Amendment. [DE 18 at 852]. This objection is based on footnote eight in the R&R stating "[t]o the extent Ground One alleges ineffective assistance of counsel in contravention of Sections Eleven and Fourteen of the Kentucky Constitution [DE 1 at 25], the claim is not cognizable under 28 U.S.C. § 2254(a) because the statute limits the Court's jurisdiction to deciding whether a state conviction violated the Constitution, laws, or treaties of the United States. [DE 12 at 800 (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991))]. The Court reads this as a simple misinterpretation of the R&R because the Magistrate Judge did apply the Sixth Amendment. The R&R includes extensive analysis of *Strickland*, which analyzed and applied the Counsel Clause of the Sixth Amendment. *See* 466 U.S. at 684–85.

The Court has reviewed the R&R and finds that the Magistrate Judge did not err in his application of *Strickland* and his analysis of Kiper's ineffective assistance of trial counsel claim. Kiper's objections are overruled

**B. Adjudication on the Merits of Kiper's Ineffective Assistance of Counsel Claims**

　　　*i.　Standard for Adjudication of the Merits*

In *Harrington v. Richter*, the Supreme Court addressed the issue of "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." 562 U.S. 86, 98 (2011). The Supreme Court held as follows:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there

be an opinion from the state court explaining the state court's reasoning. . . . Where a state court's decision is unaccompanied by an explanation, the habeas Petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

. . .

When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Cf. Harris v. Reed*, 489 U.S. 255, 265, 109 S. Ct. 1038, 103 L.Ed.2d 308 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).

. . .

This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits."

*Id.* at 98–100.  In sum, *Harrington* establishes a rebuttable presumption that the state court adjudicated a federal claim on the merits.  *See id.*

In *Johnson v. Williams* the Supreme Court extended this rebuttable presumption to instances where the state court ruled against the defendant in an opinion that addressed some issues but did not expressly address the federal claim in question. 568 U.S. 289, 293, 301 (2013) ("We see no reason why [the *Harrington*] rule should not apply when the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding."). In *Johnson*, the Supreme Court held that the federal claim at issue must be presumed to have been adjudicated on the merits by the state courts, that this presumption was not adequately rebutted by Johnson, and, therefore, the restrictive standard of review set out in § 2254(d)(2) consequently applies. *Id.* at 293, 301.

15

ii.    *Analysis*

Kiper objects to the Magistrate Judge's findings in the R&R that "grounds two and grounds four through nine . . . were properly and presumably adjudicated on the merits."[6]  [DE 15 at 842]. The Magistrate Judge found that the Kentucky Court of Appeals ruled against Kiper on grounds two and four through nine but did not expressly discuss the claims in detail.  [DE 12 at 811–12 (citing *Kiper II*, 2020 WL 3027315, at *1–4)].

Grounds two and grounds four through nine all include Kiper's ineffective assistance of counsel claims.[7]  The Kentucky Court of Appeals held that "the trial court properly determined that Kiper failed to establish his claim of ineffective assistance of counsel under *Strickland*." *Kiper II*, 2020 WL 3027315, at *4.  As a result, it was unnecessary to further address "peripheral issues that [were] non-essential to the disposition of the issue before" them.  *Id.*  Kiper has not provided

---

[6] Kiper makes the same objection separately in a *pro se* objection that was later adopted by counsel.  [DE 18 at 852].  The Court will consider these objections together because they are identical.

[7] Grounds two and four through nine read as follows: Ground 2—"Kiper received ineffective assistance of counsel when defense counsel failed to move the trial court for a limiting instruction concerning the use of Kiper's prior felony conviction"; Ground 4—"Kiper was denied the effective assistance of counsel in violation of his 6th, and 14th Amendments of the United States Constitution, and Sections 2, 7, and 11 of the Kentucky Constitution, when counsel failed to conduct a pretrial investigation of potential defense witnesses and the facts of the case to bolster Kiper's defense and secure defense exhibit #3 which was not properly presented"; Ground 5—"Kiper was denied a fair trial when his defense counsel failed to seek a continuance on the day of trial"; Ground 6—"Kiper was denied the effective assistance of counsel in violation of his 6th, and 14th Amendments of the United States Constitution, and Sections 2, 7, and 11 of the Kentucky Constitution, when defense counsel never reviewed video of the crime, Commonwealth's exhibit #1 received as part of discovery, never viewed before trial"; Ground 7—"Kiper was denied his 5th Amendment right to an impartial jury, his 6th Amendment right to effective assistance of counsel and his 14th Amendment right to due process when defense counsel allowed an impartial (sic) juror to remain on the panel"; Ground 8—"Kiper was denied the effective assistance of counsel in violation of his 6th, and 14th Amendments of the United States Constitution, and Sections 2, 7, and 11 of the Kentucky Constitution, when defense counsel failed to require the admonition to be read and the jury to be corrected after the Commonwealth committed prosecutorial misconduct when he argued the case during opening statements at trial"; Ground 9— "Kiper was denied the effective assistance of counsel in violation of his 6th, and 14th Amendments of the United States Constitution, and Sections 2, 7, and 11 of the Kentucky Constitution, when defense counsel failed to object during opening statements to the Commonwealth playing a video of the crime that had not been properly introduced into evidence or authenticated, and when defense counsel failed to object when Commonwealth introduced into evidence exhibit #1 the video into evidence that was not properly authenticated."  [DE 1 at 4–6].

sufficient evidence to rebut the *Harrington* and *Johnson* presumption that these six claims were adjudicated on the merits. [DE 15; DE 18]. Moreover, holding that Kiper's ineffective assistance of counsel claims were not adjudicated on their merits would be contrary to the holding of the Kentucky Court of Appeals. *See Kiper II*, 2020 WL 3027315, at *4. Therefore, the Magistrate Judge correctly applied the restrictive standard of review set forth in § 224(d)(1). [DE 12 at 812].

When conducting a review under § 2254(d)(1), the Court must look only to the clearly established precedent of the United States Supreme Court. *See Lockyear v. Andrade*, 538 U.S. 63, 70–71 (2003). Because grounds two and four through nine involved claims of ineffective assistance of counsel, the Court looks to the clearly established precedent in *Strickland* and its progeny. To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Applying the restrictive standard of review set forth in § 2254(d)(1), federal habeas relief may not be granted unless Kiper demonstrates the state appellate court's adjudication of the claim "was contrary to, or involved an unreasonable application of," the *Strickland* standard. *See Harrington*, 562 U.S. at 100-101 (citing § 2254(d)(1); Williams, 529 U.S. at 412). The Court finds that the Magistrate Judge correctly articulated this standard and applied it to grounds two and four through nine [DE 12 at 812–24] because Kiper's claims were adjudicated on their merits.

Kiper only objected to the R&R to the extent that the Magistrate Judge found that grounds two and four through nine were adjudicated on their merits and applied the restrictive standard of review required by § 2254(d)(1). [DE 15 at 842]. After reviewing the R&R, *Kiper II*, and Kiper's objection, the Court finds that Kiper's ineffective assistance of counsel claims were adjudicated on their merits and that the Magistrate Judge applied the correct standard of review. Therefore,

the Magistrate Judge did not err in his application of § 2254(d)(1).  Kiper's objections are overruled.

### C. Adjudication on the Merits of Kiper's *Brady* Claim

Kiper objects to the Magistrate Judge's findings that ground thee, Kiper's *Brady* claim, was presumably adjudicated on its merits by the Kentucky Court of Appeals.[8]  [DE 15 at 843]. The Magistrate Judge found that although the Kentucky Court of Appeals did not expressly discuss Kiper's *Brady* claim, its remarks suggest that it simply regarded this claim as too insubstantial to merits discussion.  [DE 12 at 826].  Specifically, the Kentucky Court of Appeals held that it "need not address peripheral issues that [were] non-essential to the disposition of the issue before" them. *Kiper II*, 2020 WL 3027315, at *4.

As explained above, *supra* Section III.B.i., *Harrington* establishes a rebuttable presumption that the state court adjudicated a federal claim on the merits.  *See* 562 U.S. at 98–100. The Supreme Court extended this rebuttable presumption to instances where the state court ruled against the defendant in an opinion that addressed some issues but did not expressly address the federal claim in question.  *See Johnson*, 568 U.S. at 293, 301.  Kiper has done nothing to rebut the presumption articulated in *Harrington* and *Johnson* other than stating that the Kentucky Court of Appeals did not rule on his *Brady* claim.  [DE 15 at 843].  The Magistrate Judge correctly found that Kiper's *Brady* claim was adjudicated on its merits.  [DE 12 at 826].  Therefore, the *Brady* claim must receive the restrictive standard of review set out in § 2254(d)(1).

When conducting a review under § 2254(d)(1), the Court must look only to the clearly established precedent of the United States Supreme Court.  *See Lockyear*, 538 U.S. at 70–71.  Here, the clearly established precedent is set forth in *Brady* and its progeny.  Under *Brady*, the

---

[8] Ground three included the following: "Kiper received ineffective assistance of counsel when trial counsel failed to file a motion in limine to exclude Kiper's 1987 felony conviction pursuant to KRS 609."

prosecution is required to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. *Id.* at 87. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith or the prosecution." *Id.* "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* This duty to disclose extends to information in the possession of the investigating law enforcement agency. *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995).

When revieing a *Brady* violation under § 2254(d)(1), the Court must determine whether the state appellate court's decision answering that inquiry in the negative "was contrary to, or involved an unreasonable application of," *Brady*. *See, e.g.*, *Montgomery v. Bobby*, 54 F.3d 668, 680 (6th Cir. 2011) (the question is whether the Ohio Court of Appeals unreasonably applied Brady in its determination that the report was not material). The Court finds that the Magistrate Judge correctly articulated this standard and applied it to Kiper's *Brady* claim [DE 12 at 826–28] because this claim was adjudicated on its merits. *See Kiper II*, 2020 WL 3027315, at *4.

Kiper only objected to the R&R to the extent that the Magistrate Judge found that the *Brady* claim was adjudicated on its merits and applied the restrictive standard of review required by § 2254(d)(1). [DE 15 at 843]. After reviewing the R&R, *Kiper II*, and Kiper's objection, the Court finds that Kiper's *Brady* claim was adjudicated on its merits and that the Magistrate Judge applied the correct standard of review. Therefore, the Magistrate Judge did not err in his application of § 2254(d)(1). Kiper's objection is overruled.

### D.  General Objections

Kiper, in his *pro se* objection adopted by counsel, objects generally because a "jurist of reason would have found it debateable whether his arguments deserved encouragement and should have proceeded further."  [DE 18 at 853].  He also objects generally to all legal and factual conclusions made by the Magistrate Judge on grounds two through nine.  [*Id.*].  Kiper's objections require significant interpretation and are, in effect, general objections.  *See Howard*, 932 F.2d at 509 ("A district judge should not have to guess what arguments an objecting party depends on when reviewing a magistrate's report." (internal citation omitted)); and *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

The Court will not review aspects of the R&R without specific objections.  *Thomas*, 474 U.S. at 149–50, 155.  Kiper's general objections do not cite specific portions of the report or describe what he believes is problematic.  *See Robert*, 507 F.3d at 994.  Kiper's general objections are not permitted because the analysis would duplicate the Magistrate Judge's efforts and wastes judicial resources.  *See Howard*, 932 F.2d at 509.  The Court has reviewed the evidence, the R&R, and Kiper's objections and is free to accept the Magistrate Judge's R&R.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 149–50, 155.  Thus, the Court finds the Magistrate Judge did not err in denying Kiper's habeas claims based on these general objections.

### E.  Certificate of Appealability

Kiper objects to the Magistrate Judge's recommendation that a Certificate of Appealability ("COA") be denied on each claim.  [DE 15 at 841–43].  Regarding his ineffective assistance of counsel claims, Kiper argues that because a reasonable jurist would find in his favor, he should be granted a COA.  [*Id.* at 842].  He also argues that he should receive COA because "[a] reasonable

jurist would find that the failure of the state to turn over exculpatory evidence is wrong and in violation of *Brady*."  [*Id.* at 843].

A COA may issue only if the petitioner has made "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). "Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.  When "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, the Court has held that Kiper's claims were decided on their merits.  Kiper has not shown "that reasonable jurists would find the district court's assessment of any of the constitutional claims debatable or wrong."  *Id.*  Thus, a certificate of appealability is denied on each claim.

### III.    CONCLUSION

Accordingly, for the reasons stated, and the Court being otherwise sufficiently advised, **IT**

**IS ORDERED** that

    1)   The Court **ADOPTS** the R&R [DE 12];

    2)   The Court **DENIES** Kiper's Objections [DE 15; DE 18]; and

    3)   A Certificate of Appealability is **DENIED**.

    4)   The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

April 28, 2023

cc: Counsel of Record

22